# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| DENISE YINGLING, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:13-0041** |
| v. | ) | **Judge Nixon / Knowles** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 12.  Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed.  Docket No. 15. Plaintiff has subsequently filed a Reply. Docket No. 17.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff completed her applications for DIB and SSI on March 13, 2009 and April 15, 2009 respectively, alleging that she had been disabled since June 14, 2008, due to depression and anxiety, high blood pressure, diabetes, fibromyalgia, "DDD low back," chronic pain, sleep apnea, irritable bowel syndrome, and stress incontinence. Docket No. 10, Attachment ("TR"), TR 112, 114, 148.  Plaintiff's applications were denied both initially (TR 53, 54) and upon reconsideration (TR 55, 56). Plaintiff subsequently requested (TR 75) and received (TR 85) a hearing. Plaintiff's hearing was conducted on November 1, 2011, by Administrative Law Judge ("ALJ") Claire R. Strong. TR 34. Plaintiff and vocational expert ("VE"), Lisa Courtney, appeared and testified. *Id*.

On November 29, 2011, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 15-33.  Specifically, the ALJ made the following findings of fact:

1.  The claimant met the insured status requirements of the Social Security Act through March 31, 2010.

2.  The claimant has not engaged in substantial gainful activity since June 14, 2008, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: obesity; hypertension; hyperlipidemia; type II diabetes mellitus; degenerative arthritis; fibromyalgia; anxiety; depression; and disorder of the right wrist (20 C.F.R. 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.	After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) that is limited to lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently; standing and/or walking six hours in an eight-hour workday; sitting eight hours in an eight-hour workday; limited squatting, limited exposure to heat, humidity, climbing, heights, wrist motion, and forceful grip; can understand and remember simple and detailed tasks; can sustain adequate persistence and pace for simple and low level detailed tasks for two-hour segments; may experience some, but not substantial, difficulty dealing with general public; can interact and get along with coworkers and supervisors; can adapt and respond to changes in a routine work setting given reasonable support; and can make/set work-related plans and goals.

6.	The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7.	The claimant was born on April 10, 1952 and was 56 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. Applying the age categories non-mechanically, the claimant is currently an individual of advanced age (20 C.F.R. 404.1563 and 416.963).

8.	The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9.	The claimant has acquired work skills from past relevant work (20 C.F.R. 404.1568 and 416.968).

10.	Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy (20 C.F.R. 404.1569, 404.1569(a), 404.1568(d), 416.969, 416.969(a), and 416.968(d)).

11.	The claimant has not been under a disability, as defined in

> the Social Security Act, from June 14, 2008, through the
> date of this decision (20 C.F.R. 404.1520(g) and
> 416.920(g)).

TR 20-28.

On December 5, 2011, Plaintiff timely filed a request for review of the hearing decision.

TR 14.  On December 28, 2012, the Appeals Council issued a letter declining to review the case

(TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner.

This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

If the Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and

testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the

extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the

administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The

purpose of this review is to determine (1) whether substantial evidence exists in the record to

support the Commissioner's decision, and (2) whether any legal errors were committed in the

process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept

as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999)

(*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful

activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) included vague and ambiguous language in her residual functional capacity assessment which did not clearly identify the vocationally relevant mental limitations resulting from Plaintiff's impairments, and did not explain the rationale behind her finding that Plaintiff could perform sustained work activity; (2) misrepresented and/or mischaracterized the evidence and failed to give proper weight to the opinion of Plaintiff's

treating mental health provider; and (3) failed to follow appropriate step five regulations and resolve apparent inconsistencies between testimony of the vocational expert and the *Dictionary of Occupational Titles*. Docket No. 12-1 at 1-3. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171,

**1. Residual Functional Capacity**

Plaintiff argues that the ALJ erred in using vague and ambiguous language in her residual functional capacity ("RFC") assessment which did not clearly identify the vocationally relevant mental limitations resulting from Plaintiff's impairments, and did not explain the rationale behind her finding that Plaintiff could perform sustained work activity. Docket No. 12-1 at 11-12. With regard to her argument that the ALJ erred in using vague and ambiguous language in her RFC assessment, Plaintiff contends that characterizations such as "limited" or "some

difficulty," used by the ALJ in reference to Plaintiff's abilities to perform certain functional movements and deal with the general public, were too ambiguous to adequately explain the abilities and limitations of Plaintiff in the work place. *Id.* at 12. Plaintiff asserts that such ambiguity "falls short of the required function-by-function assessment," and renders the ALJ's hypothetical questions posed to the Vocational Expert unclear. *Id.* at 12-13.

Defendant responds that there is no requirement for specificity of diction in this regard, and notes that Plaintiff has cited no authority for her proposition to the contrary. Docket No. 15 at 12-13. Defendant further argues that because the State agency consultants used the terms in their assessments and because Plaintiff's attorney did not object to the ALJ's use of the terms at the hearing, the ALJ's use of this language was permissible. *Id.* Finally, Defendant contends that the ALJ properly discussed in detail the objective medical evidence of record, the opinion evidence of record, and the hearing testimony, and explained how that evidence supported her determination that Plaintiff could perform sustained work activity. *Id.* at 10.

Plaintiff, in her Reply, reiterates her assertion that these terms were "too vague" and "undefined" for the required function-by-function assessment. Docket No.17 at 1-2. Plaintiff also reiterates her contention that this "ambiguity" afforded the Vocational Expert too much room for interpretation when rendering her opinion in response to the ALJ's hypothetical questions. *Id.* at 2. Plaintiff attributes the failure to object to such language at the hearing to her having a different attorney representing her at the hearing. *Id.*

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical

abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b).

The ALJ in the case at bar ultimately determined that Plaintiff retained the RFC to perform light work with additional limitations. TR 21-22. Specifically, the ALJ found that Plaintiff was:

> limited to lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently; standing and/or walking six hours in an eight-hour workday; sitting eight hours in an eight-hour workday; limited squatting, limited exposure to heat, humidity, climbing, heights, wrist motion, and forceful grip; can understand and remember simple and detailed tasks; can sustain adequate persistence and pace for simple and low level detailed tasks for two-hour segments; may experience some, but not substantial, difficulty dealing with general public; can interact and get along with coworkers and supervisors; can adapt and respond to changes in a routine work setting given reasonable support; and can make/set work-related plans and goals.

*Id.*

Although Plaintiff contends that the ALJ did not explain the rationale behind her finding that Plaintiff could perform sustained work activity, the ALJ specifically considered the Disability Reports, Work History Reports, Function Report, and Pain Questionnaire; treatment records from Dr. Dunn, Dr. Knapp, the Madison Family Clinic, United Neighborhood Health

Services, Meharry Medical Clinic, and Centerstone Mental Health Center ("Centerstone"); assessments from Dr. Davis, Dr. Johnson, Dr. Sailors, Dr. Ryan, Dr. Paul, Dr. Lawrence; and Plaintiff's testimony. TR 21-27. As can be seen, the ALJ evaluated the objective and testimonial evidence of record when reaching Plaintiff's RFC determination, and the Regulations do not require more.

Despite Plaintiff's assertion that the ALJ used vague and ambiguous language in the hypothetical questions posed to the VE, the ALJ used the language contained within the assessments of Dr. Davis, Dr. Johnson, and Dr. Paul. TR 529, 533, 539. For example, Dr. Davis, in his medical assessment, noted that Plaintiff had the "postural limitations" of "limited" squatting and the "other physical/environmental limitations" of "limited" heat/humidity (TR 533), while in her assessment, Dr. Johnson checked the box for "limited" handling/gross manipulation (TR 539). Dr. Paul stated that Plaintiff could, "with some but not substantial difficulty," perform low level tasks and deal with the general public. TR 529. Although Plaintiff objects to the ALJ's usage of "limited" and "some difficulty" in the hypothetical questions presented to the vocational expert, as has been demonstrated, this diction came from assessments of record (TR 529, 533, 539), which significantly, the VE had reviewed (*see* TR 45, 47-50). Because it is proper for the ALJ to include information from the record in the proffered hypothetical questions to the VE, and because the information included by the ALJ in the case at bar came directly from the record, the ALJ's questions were valid, as was the reliance upon the VE's answers thereto. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). Accordingly, Plaintiff's argument fails.

## 2.  Weight Accorded to Opinion of Plaintiff's Treating Mental Health Providers

Plaintiff argues that the ALJ erred in not according greater weight to the opinions of her treating mental health providers from Centerstone Mental Health Center ("Centerstone"). Docket No. 12-1 at 18-19.  Specifically, Plaintiff maintains that the ALJ erred in discounting several Tennessee Clinically Related Group ("CRG") evaluations completed by Centerstone staff.  *Id.* at 13.  Plaintiff contends that the CRGs should have been accorded more weight because they were completed by people who had treated her for years, and because the CRGs were supported by her Centerstone treatment notes.  *Id.* at 18. Plaintiff asserts that these CRGs show significant mental limitations, and that the ALJ erred in "discrediting these opinions, or parts thereof, without adequate consideration of what this evidence actually shows." *Id.* at 13. Plaintiff argues that "the ALJ misrepresented and/or mischaracterized this evidence in her finding that they were internally inconsistent, and in supporting her finding that Dr. Paul's assessment was consistent with Plaintiff's mental health treatment records."  *Id.*, *citing* TR 25-26. Plaintiff concedes that the assessments indicate "moderate limitations," but contends that it is not the same definition of "moderate" that is used in the SSA. *Id.* at 17. Plaintiff maintains that the specific language used to describe the severity of the limitations should be more controlling than the characterization of the severity itself. *Id.*  Plaintiff also argues that the ALJ discounted and mischaracterized Plaintiff's GAF scores when noting that the evidence suggested "moderate limitations" rather than "marked limitations," resulting in the ALJ's according too much weight to the findings of Dr. Paul. *Id.* at 16-17.

Defendant responds that, while the ALJ has a duty to consider evidence from all acceptable medical sources, there is no requirement that the ALJ provide "an express discussion

of each factor [discussed in 20 C.F.R. §§ 404.1527(c), 416.927(c)] in evaluating opinion evidence from other sources." Docket No. 15 at 15. Defendant argues that the ALJ considered and expressly discussed the Centerstone treatment records, including the opinions provided by the mental health providers, and incorporated them into her RFC assessment. *Id.* at 15-16. Defendant notes that, contrary to Plaintiff's assertion, the ALJ accepted, in large part, the opinions of the Centerstone providers regarding her functional limitations. *Id.* at 16.

With regard to her argument that the ALJ "mischaracterized and/or misrepresented" evidence from Centerstone regarding her limitations, Defendant argues that Plaintiff has offered no evidence to suggest that she suffered "marked" rather than "moderate" limitation. *Id.* at 17. Defendant contends that, in fact, the ALJ's findings were consistent with the Centerstone assessments. *Id.* Defendant further contends that, contrary to Plaintiff's assertion, the ALJ did consider her GAF scores, which were somewhat inconsistent with the "more detailed functional assessments in the record." *Id.* at 17-18. Defendant argues that the ALJ properly considered Plaintiff's Centerstone records, and accorded appropriate weight to the CRG forms and the GAF scores, given the nature of the other opinions and evaluations of record. *Id.* at 18.

Plaintiff replies that the language present in the notes to the CRG evaluation indicates "marked" limitations rather than "moderate" limitations. Docket No. 17 at 2-3. Specifically, Plaintiff points to the following language in the notes:

> [R]egular or frequent problems with performing daily routine
> activities and unable to perform these up to acceptable standards
> without frequent assistance; limited integration in the community,
> with little or no use of natural supports and/or marginal capacity to
> take part in a variety of social activities or manage herself in
> relationship to others and/or demonstrates aggressive episodes
> with limited ability to self manage behavior; regular or frequent

difficulty with concentration and can complete simple tasks within timeframes but needs prompting and help; and regular or frequent difficulty in accepting and adjusting to change, as adaptation will require some intervention.

*Id.* at 2-3, *citing* TR 552-53.

Plaintiff reiterates her contention that her GAF scores indicate serious symptoms, and that the ALJ failed to adequately address these scores in her ruling. *Id.* at 3-4.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs

and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[2] *See, e.g.,* 20 C.F.R. § 404.1527(d); *Allen v. Commissioner*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Commissioner*, 276 F.3d 235, 240 (6th Cir. 2002)(*quoting Harris v. Heckler*, 756 F.3d 431, 435

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. §1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Commissioner*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010); *Nelson v. Commissioner*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006); *Hall v. Commissioner*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

(6th Cir. 1985)).  If the ALJ rejects the opinion of a treating source, he is required to articulate

some basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The

Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 C.F.R. § 404.1502.

As a preliminary matter, Plaintiff argues that the ALJ erred in not according greater

weight to the opinions of her treating mental health providers from Centerstone.  But the specific

points of contention she raises relate to the ALJ's evaluation and characterization of her GRG

assessments and GAF scores, which were completed by a variety of mental health providers, the

majority of whom are not "acceptable medical sources" who can provide "medical opinions" as

defined by the Regulations.  *Compare* TR 243-512, 545-592, 655-761, 781-797, *with* 20 C.F.R.

404.1513(a),(d), 404.1527(a)(2), 416.913(a),(d), 416.927(a)(2); SSR 06-3p.  As such, while the

ALJ should consider those records because she must consider the evidence in its entirety, they

are not entitled to the deference due evidence from treating physicians, and she is not bound to

accord those opinions any specific weight.

As noted, Plaintiff contends that the ALJ erred by not explicitly stating the weight

accorded to her July 2009 and June 2010 CRGs (TR 552-554, 729-731) and the reasons therefor.

Docket Nos. 12-1, 17.  Plaintiff concedes that the CRGs at issue indicate "moderate" limitations,

as stated by the ALJ, but argues that the specific language used in the CRGs to describe her

limitations demonstrates "significant and substantial limitations which are much more indicative

of 'marked' limitations as that term is defined by SSA."  Docket No. 17 at 3.  Plaintiff contends

that the ALJ should have looked at the description of her limitations, rather than the

characterization used, particularly because: (1) her low GAF scores are consistent with the

"significant and substantial limitations" described in the CRGs; (2) the CRGs were completed by

mental health providers who had treated her for years; and (3) the CRGs were consistent with,

and supported by, her Centerstone treatment notes.  *Id.*  Plaintiff acknowledges that the ALJ

mentioned these CRGs in her decision, but argues that the ALJ "failed to make any finding

whatsoever with regarding [*sic*] to the weight given to these assessments, much less provide any

rationale for rejecting these assessments."  Docket No. 12-1, at 16.

> With regard to the CRGs at issue, the ALJ stated:

> > A Consumer Related Group form was completed in July 2009,
> > which showed only moderate mental limitations; however, the
> > claimant's GAF score still reflected 45. The claimant continued to
> > report minimal relief with medication. Exhibit 8F.
> > . . .
> > At follow up appointments in June and August 2010, the claimant
> > stated that she was unsure whether the medication was helping.
> > Despite treatment alternatives, the claimant chose to stay with her
> > current regime. The claimant was assessed with only moderate
> > mental limitations, but her GAF score remained 45. Exhibit 14F,
> > 15F.

TR 25, *citing* 545-592, 655-743.

> While the ALJ is required to consider the entirety of the evidence of record, reach a

reasoned decision, and articulate the basis for that decision, there is no requirement that the ALJ

discuss in her decision each and every piece of evidence in the record or the weight accorded

thereto, particularly when, as discussed above, that evidence comes from sources that are not

"acceptable medical sources" capable of rendering "medical opinions."

In the case at bar, after noting that Plaintiff had sporadically sought mental health treatment beginning in 2005 and had "reinitiated" care with Centerstone in September 2008, the ALJ accurately discussed Plaintiff's Centerstone care between September 2008 and June 2011. TR 25-26, *citing* 243-512, 545-592, 655-761, 781-797. Contrary to Plaintiff's assertion, the ALJ did not misrepresent or mischaracterize the evidence therefrom. There is nothing improper with the ALJ's discussion of Plaintiff's Centerstone records.

Additionally, when discussing the evidence relating to Plaintiff's mental limitations, the ALJ recounted Plaintiff's testimony and subjective complaints, as well as the opinion of State agency psychological consultant Dr. Paul. TR 26, *citing* 513-530. The ALJ also noted that Dr. Paul's opinion had been affirmed at the reconsideration level by Dr. Lawrence. *Id.*, *citing* 611.

After discussing the evidence of record pertaining to Plaintiff's mental limitations, the ALJ stated:

> The undersigned finds the assessment by Dr. Paul to be consistent with the mental health treatment records, which consistently reflect no more than moderate limitations once the claimant began medication. The GAF score never changed from the initial assessment and was in conflict with the subsequent moderate findings. The claimant's allegations of greater functional limitations are not consistently reflected in the treatment records. Therefore, the specific limitations opined by Dr. Paul have been incorporated into the residual functional capacity.

> In sum, the record documents the claimant's severe impairments of . . . anxiety; [and] depression . . . . Consideration has been given to these impairments as reflected in the residual functional capacity. However, the functional restrictions alleged by the claimant are not entirely credible, as they have been found to be disproportionate to the clinical findings. The claimant's subjective complaints have

18

been accepted, as far as they were supported by the objective evidence and the record as a whole. Her impairments are limiting; however, not disabling. The record simply does not support the claimant's allegations of disability.

TR 26-27.

As can be seen, the ALJ explained that she accepted the opinions and limitations that were consistent with, and supported by, the record, and discounted those that were not. The ALJ discussed the evidence of record, reached a reasoned decision, and articulated the basis for that decision; the Regulations do not require more. Plaintiff's contention that the ALJ erred by not explicitly noting the weight accorded to her July 2009 and June 2010 CRGs and the reasons therefore, fails.

Plaintiff next contends that the ALJ did not adequately consider her GAF scores. Docket No. 12-1. GAF scores, however, are not determinative of disability for Social Security purposes, and the Social Security Administration has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs." *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01 (August 21, 2000). Moreover, the Social Security Administration has indicated that GAF scores have no "direct correlation to the severity requirements in [the] mental disorders listings." *Id.* Although "the GAF is a test used by mental health practitioners with respect to planning treatment and tracking the clinical progress of an individual in global terms, the ALJ is not bound to consider its results at the exclusion of other medically reliable evidence." *Alvarez v. Barhart*, 2002 WL 31466411, at *8 (W.D.Tex. October 2, 2002). Nor is a GAF score determinative of an individual's RFC assessment. *Id.* ("A GAF score is not a rating typically relied upon with respect to assessing an

individual's RFC under the Act."); *see also Howard v. Commissioner*, 276 F.3d 235, 241 (6th Cir. 2002)(GAF score is not essential in assessing RFC).

Although there is no requirement that the ALJ discuss Plaintiff's GAF scores, and GAF scores are not determinative of disability for Social Security purposes or determinative of an individual's RFC assessment, the ALJ in the case at bar, when discussing Plaintiff's Centerstone treatment records, did, in fact, discuss Plaintiff's low GAF scores. TR 25. Specifically, the ALJ noted, *inter alia*, that Plaintiff's September 2008 GAF score was "estimated at 45 with marked limitations"; her July 2009 GAF score "still reflected 45"; her June and August 2010 GAF score "remained 45." *Id.* The ALJ's decision demonstrates that she was aware of, and considered, Plaintiff's GAF scores, and the Regulations do not require more. Plaintiff's argument on this point likewise fails.

The ALJ properly considered the objective and testimonial evidence of record relating to Plaintiff's mental limitations, reached a reasoned decision, and properly explained the rationale for her decision. Plaintiff's claims regarding the ALJ's evaluation of her Centerstone records fail.

**3. Step Five Evaluation**

Plaintiff contends that the ALJ erred in her consideration of the evidence during step five of the sequential evaluation. Docket No. 12-1 at 19. Specifically, Plaintiff argues that the ALJ erroneously found that she had skills transferrable to three sedentary jobs, and further failed to adequately question the VE regarding the "amount or ease of transition" to the lines of work

proposed, as required by the medical-vocational guidelines, or "grids," found in 20 C.F.R.§ 404.1568(d). *Id.* at 20. Plaintiff additionally argues that the stated jobs are "at least somewhat inconsistent with the ALJ's RFC finding," but "this inconsistency was never addressed or resolve[d] in the testimony or the ALJ's decision." *Id.* at 20-21. Plaintiff contends that the three identified jobs require frequent handling, and two of them require occasional fingering with the third requiring constant fingering, which are inconsistent requirements with the ALJ's finding that Plaintiff had limited wrist motion and forceful grip. TR 21.

Defendant responds that the ALJ is not bound by the grids since she found that Plaintiff's impairments limited her to less than a full range of light work. Docket No. 15 at 20. Defendant contends that, accordingly, the ALJ is to use the grids as a framework for decision-making and can rely upon the VE's testimony regarding the type of skills that Plaintiff acquired in her past work and the degree of transferability of those skills to other work available in significant numbers in the national economy. *Id.* Defendant asserts that the VE explicitly testified that a limitation on the amount of wrist motion and forceful grip that an individual could perform would erode the occupational base and she appropriately decreased the numbers of available jobs in her testimony to account for those limitations. *Id.* at 21. Defendant contends, therefore, that the ALJ properly accepted the VE's testimony. *Id.* Defendant maintains that the ALJ's findings were supported by substantial evidence, reached through the application of the correct legal standards, and should stand. *Id.* at 20.

Plaintiff, in her Reply, reiterates her assertions that the ALJ failed to properly apply the Regulations of 20 C.F.R. § 404.1568(d) and erroneously found that she had transferrable skills to three sedentary occupations without evaluation or consideration of this Regulation and its

requirements. Docket No. 17 at 4-5.

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). In the presence of nonexertional limitations that would preclude the application of the grid regulations, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Secretary*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's limitations. *See Varley*, 820 F.2d at 779 (*quoting O'Banner v. Secretary*, 587 F.2d 321, 323 (6th Cir. 1978)).

As noted, the ALJ in the case at bar determined that Plaintiff did, in fact, have nonexertional impairments (TR 25-27), the presence of which precludes the application of the grid regulations (*Kirk*, 667 F.2d 531). Thus, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which [Plaintiff could] exertionally handle." *Id.*

At Plaintiff's hearing, the ALJ, after explaining that she would "assume your testimony is based on your knowledge, education, training and experience and is consistent with the Dictionary of Occupational Titles, unless you tell me otherwise," asked the VE if she was "familiar with the claimant's vocational background." TR at 45. After receiving an affirmative answer from the VE, the ALJ then asked the VE to "identify the claimant's work performed within the past 15 years." *Id.* After the VE discussed Plaintiff's past work, the ALJ asked the VE whether Plaintiff had acquired any transferrable skills. TR 46. The VE responded:

> A    She does have transferrable skills because she - - what I
>      call general office skills. She answered the phone and did
>      some data entry and she made reservations. So I put - - I
>      said she does have transferrable skills to jobs such as a
>      receptionist.
>
>                          . . .
>
> A    . . . Receptionist, appointment clerk and just data entry
>      clerk.

*Id.*

The ALJ then posed the following hypothetical questions to the VE, all of which incorporated Plaintiff's nonexertional limitations, as well as Plaintiff's age, education, work experience, and postural limitations. *See* TR 45-50.

> Q    . . . First hypothetical is based on [Exhibit] 6F and 5F.
>      Assume a person of the claimant's age, advanced age, with
>      a 12th-grade education and work experience as you've
>      described who's able to lift and carry up to 20 pounds
>      occasionally, 10 pounds frequently, stand and/or walk for
>      six hours, sit for eight hours. Postural limitations is limited
>      squatting.
>
>      Physical and environmental limitations, limited heat,
>      humidity, climbing, heights and wrist motion and forceful

grip.

. . .

5F says there were five categories that were marked moderately limited and the assessment is the following. The individual can understand and remember simple and detailed tasks, individual can with some, but not substantial difficulty, sustain adequate persistence and pace for simple and low-level detailed tasks for two-hour segments across normal work day and work week. Individual can experience some, but not substantial difficulty dealing with the general public, can interact and get along with coworkers and supervisors, can adapt and respond to changes in a routine work setting, given reasonable support, can make and set work-related plans and goals. Could that individual do any of the claimant's past relevant work?

A    Well, because of the - - mainly because of the mental, the past work as a caretaker has precluded the definition because it was medium. The night auditor was skilled and both the customer service rep at light and sedentary were both SVP of 5 and 6, so they're skilled and would be precluded under this RFC.

Q    Okay, would there be other work existing in the regional and national economy that individual could perform?

A    Yes. In fact, those skills that transfer to sedentary - - to perform- - well, in my opinion, definitely the appointment clerk 237.367-010. It's sedentary. The SVP is only three, so it's a low-level semi-skilled work. And there would be - - at least 3,500 for Tennessee and 75,000 from the United States. There's a lot of those type of jobs.

Now the receptionist, I think in some occupational settings that that could still be a job. It's semi-skilled and sedentary and the DOT code is 237.367-038. But because the SVP is four and because of maybe a little more sustained contact with the public asking questions, I don't think all those, so

we're kind of limited to places that aren't as large, you know, not great big office setting or something like that. But I still think, you know, reasonably about 1,500, 1,600 for the region would still be available and 45,000 for the Untied States, because there's just a ton of those out there. And then the data entry, there's not very much contact with the public. So I think it would be available and that is 203.582-054, it's sedentary, the SVP is four, but - - and because of that four, I'll knock down the number some. I would say at least 2,000 would be available in the region. I don't think they really cause any forceful grip. It's not a part of it, wrist motion, somewhat, but I am knocking the numbers way down, probably 75 percent. So 2,000 for the region and about 35,000 for the United States.

. . .

Q      Okay. So appointment clerk was the first [job], receptionist, the second and data entry, third.

A      Right. . . . And those are ones utilizing skills from her past work.

Q      All right, thank you. All right. Next hypothetical is based on [Exhibit] 7F and 5F. 7F says individual could lift up to 20 pounds occasionally, 10 pounds frequently, could stand/or walk about six hours, could sit about six hours, push and/or pull was unlimited, limited in gross manipulation of the right upper extremity to frequently and then 5F is what I gave you in the prior hypothetical. . . . So could that individual do any of the claimant's past relevant work?

A      Those jobs I was - - with what she's using the tools and process of the trade, the transferrable skills jobs, I cited under one - - would still be available under two.

TR 47-50.

Plaintiff's representative at the hearing then posed her own hypothetical question to the

VE as follows:

> Q       If as [Plaintiff] testified, she would have to take a nap every day for 1-1/2 hours to 2 hours, would that have an impact on any of these jobs?
>
> A       If such an individual would have to lie down that many times they'd lose their job, even if they got it because they couldn't keep up with their work. They be fired. [*sic*].

TR 50.

As can be seen, the ALJ's hypothetical questions properly included both Plaintiff's exertional and nonexertional limitations. Moreover, as can be seen, the VE explicitly acknowledged Plaintiff's mental and physical limitations (including those of her wrist and her ability to grip) and specifically articulated that she was significantly reducing the number of available jobs to reflect those additional limitations. Additionally, the VE explicitly considered the exertional and SVP levels of the stated jobs and noted whether and why Plaintiff's past relevant work and the stated available positions would be appropriate for each of the hypothetical claimants. The ALJ, therefore, properly relied on the VE's answer to the hypothetical questions to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley*, 820 F.2d at 779. Accordingly, Plaintiff's claim fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge